I'm going to ask for appearances again, starting with the appellant. Christopher Sulkin for Madison Mutual Insurance Company. And now for the appellees, starting with Mr. Cassidy. Andrew Cassidy for the appellee Susan King. All right. Andrew Mahoney for appellee Misty Young. Matthew Compton, a map of appellee Cassandra Weedman. It's my understanding that for the appellees, only Mr. Cassidy will be arguing. That is correct, Your Honor. Okay, thank you. Mr. Sulkin, you may proceed with your argument. Thank you, Justice. Good morning, and may it please the court. My name is Christopher Sulkin, and I represent Madison Mutual Insurance Company. I believe there are only two narrow issues in this case for the court to consider today. The first one being whether a misrepresentation in a policy of insurance application has to be made by the insured rather than someone on behalf of the insured. In this case, an insurance broker. And the second being whether or not the policy in this case has a notice provision and whether that notice provision is a valid defense to coverage under the facts. And if it pleases the court, I'm going to start with the rescission issue. So, counsel, good morning. Good morning. With respect to the first issue that you mentioned, is that issue not forfeited? That was not raised in the trial court until the motion for consideration, right? The issue with respect to imputation of the misrepresentation? No, it was raised numerous times before that, Justice. If you read the first complaint that Madison Mutual filed, it's on appendix page 4. Paragraph 3 alleges that Leadbetter Insurance Agency was an independent insurance broker. Paragraph 7 alleges that Leadbetter submitted Carol Wiedemann's insurance application to Madison Mutual. Paragraph 8 states that Madison Mutual issued the policy to Wiedemann. And this is a quote from the complaint. Based upon the application information submitted on behalf of Carol Wiedemann by Leadbetter Insurance Agency. And the prayer for relief in that complaint states that they're seeking rescission pursuant to section 154 of the Illinois Insurance Code. Now, what happened here was Carol Wiedemann passed away and her deposition was never taken. When the case reached summary judgment, the only evidence when the Madison Mutual's brief was filed was the deposition of Patty Leadbetter. And I would agree that the motion did focus on Carol Wiedemann making that statement. But if you read...  Directly, correct. What's that? That Carol made it directly. That she herself made it. She did. Not someone made it on her behalf. She did. And the reason why it said that was because there was no evidence of that at all until a response was filed. When Susan King's response was filed for the first time, an affidavit by Kimberly Wiedemann was attached. Kimberly Wiedemann was Cassandra's mother, who is a claimant, and Carol's daughter. And that affidavit claimed that no, Patty Leadbetter put that information into the insurance application on her own. However, if you read the motion for summary judgment, all of the allegations in there mention that this rule under Section 154 applies both if she made it and if it was made on behalf of the insured. So Madison Mutual was taken by surprise by this affidavit, so it didn't... It wasn't the primary focus of the brief. I will agree with that. The initial motion for summary judgment briefing, it was not the primary focus. It was, however, mentioned in that briefing. Section 154 was quoted. There was argument after we received the affidavit of Kimberly Wiedemann at trial in which it was discussed that it doesn't matter. That after we learned of this affidavit and oral argument was held, the oral argument was made by my partner that, well, wait a minute, this doesn't matter, that the information was submitted on behalf of Carol Wiedemann. So I don't agree with my opposing counsel's arguments that this was waived in any way. It was brought up in the original complaint. And I do agree with Your Honor that it wasn't the focus at the time because Carol Wiedemann had passed away and there was no evidence whatsoever at the time that initial brief was filed that there was any other argument than Carol Wiedemann made those statements because Patty Ledbetter testified she did. And then once that argument was raised, we did state that at oral argument on the motion for summary judgment that, wait a minute, this doesn't matter. The trial judge then said, well, I'm going to accept Kimberly Wiedemann's affidavit, which was an error of law, because as we all know, Section 154 doesn't matter. That's when the motion to reconsider was filed. And all of those arguments were made a second time. But even before that, in the motion, it was stated that we had a right to rescind this policy because the misstatement was provided in the application process, not necessarily that it was provided exclusively by Carol Wiedemann. And this is a quote directly out of the motion, that we would not have issued this policy per Patty Ledbetter's testimony and per our underwriter's affidavit had Madison Mutual been apprised by this independent insurance agency through the application process involving Carol Wiedemann, that there was a dog, a pit bull in the home. That's on Report of Proceedings, page 34, which is part of our motion for summary judgment. So it's clear that this was addressed during the hearing after we learned of this affidavit that was going to be submitted by the respondents saying, well, wait a minute, now we have this affidavit of Carol Wiedemann. Was it addressed? It should have been addressed more in the motion had we received this affidavit beforehand. But the affidavit did not exist before summary judgment. It existed during the response to summary judgment. There was no testimony in any deposition before summary judgment that anyone but Carol Wiedemann had made this statement. Under those facts, I don't believe that it's been waived. So when you said the trial court accepted this affidavit, the trial court then was making credibility determination, was it not? And that can't be done on a motion for summary judgment. That's absolutely correct, Justice. That's part of our argument here was that when we filed the motion to reconsider, most of it was about, well, the court misapplied Rule 154 because even if the court believed Kimberly Wiedemann's affidavit that this was Patty Ledbetter's fault, it doesn't matter under Section 154. But we did alternatively make the argument that you just raised, which is, well, if the trial court thinks that this is Kim Wiedemann, or if he believes Kim Wiedemann's affidavit that Carol didn't say this and Patty Ledbetter did, that is judging the credibility of two different affidavits, or excuse me, an affidavit and a deposition testimony. And the court simply can't do that at the summary judgment stage. So, therefore, it was improper no matter what. And if the court honestly believed that this case turned on deciding who was more credible, it couldn't do that. But I think for this court, that ruling doesn't matter because it simply doesn't matter under the case law or under 154 because that application error was made either by Carol or it was made by Patty Ledbetter on her behalf as her independent insurance broker. And under either scenario, that doesn't matter because Section 154 in the policy of the state is, if an agent makes that on behalf of the insured, it's no defense to a misrepresentation. It's no defense if it was innocently made, if it was a mistake, that Madison Mutual can't be prejudiced by that innocent mistake. And I understand my co-counsel's position that they didn't do anything and it's their clients are asking for this coverage to exist. If Patty Ledbetter made that error, their remedy is suing Ledbetter Insurance, that Carol's estate can sue Ledbetter Insurance and say, wait a minute, you breached your duty to me by doing this incorrectly, if that truly is what they claim happened. But the statute does not. Let me interrupt for one second here. Assuming then there is no forfeiture, let's take another step back. What evidence is there in the record to establish that Patty actually was a broker and Carol's agent as opposed to an agent of Madison Mutual? So in her deposition, Patty Ledbetter was asked extensively about what sort of work she did. And she testified that she does not work exclusively for Madison Mutual, that she does work for, I think it was 10 to 15 insurance companies somewhere around there, that she can place insurance policies for any of those companies. And in fact, in this specific instance, she placed Carol's automobile coverage with a different company. And Madison Mutual writes automobile policies. So Patty Ledbetter said, well, I'm going to send Carol's automobile policy to a different company, not Madison Mutual, and I'm going to send the homeowner's coverage to Madison Mutual. Patty also testified that some of the companies she worked for would have insured a house that had a pit bull in it at the time, including Founders Insurance. So Patty was not bound to send any insurance whatsoever to Madison Mutual. Well, I was going to ask, what about the contract that talks with Madison Mutual that specifically mentions Patty or Ledbetter agency as an agent of Madison Mutual? What about that language, counsel? That language is to inform them that they have a right to use the software in order to transfer these applications to Madison Mutual for review. Justice, if you review the contract, however, it doesn't state that they're an agent. It states they're an independent contractor, that Patty Ledbetter and the Ledbetter agency shall always be considered an independent contractor. There is no traditional insurance agency captive agent relationship between the two of them. And if we look at the test that's been set forth in Illinois for determining when an insurance agent is a broker versus an agent, Patty Ledbetter, it's clear that Patty Ledbetter and the Ledbetter agency is not, Carol's, is not an agent of Madison Mutual. The factors, and I've quoted from the Founders Insurance Company versus White case, the four factors are who first set that individual in motion? Well, we know that it was Carol, that Carol went to Ledbetter agency and said, hey, I need auto insurance. Will you also quote me homeowner's insurance? The second one is who controlled that individual's action? And again, it was Carol. Carol could decide if she wanted any of those quotes. She could decide what insurance company they were going to select. The third is who paid that individual? Carol paid, paid them. The fact that they might have collected premiums in no way makes them an agent of the insurance company. That's been decided several times by this court. And the final factor is whose interest is that individual protecting? And we know that she wasn't protecting Madison Mutual's interest because she placed business for Carol with a different company. If she was protecting Madison Mutual's interest, she would have said, I'm placing both your auto insurance and your homeowner's coverage with Madison Mutual. That would have protected the insurance company, but that's not what she did. She protected Carol and apparently said, well, I've got a better quote or better coverage from a different insurance company. And that's who she sent it to. So I think. What if we look at the Madison Mutual's application itself? That includes a paragraph, does it not, before the signature lines that says that coverage is not in effect unless the application is, quote, signed by an agent of the company. And the only other signature here, other than Carol's, was the owner of Leadbetter Insurance Company or agency. How do we reconcile that? The application does say that, Your Honor, but I think where, again, we have this language about, you know, the word agent in insurance context is thrown around a lot, as is the word broker. And it's often used just incorrectly under the law. I think we're talking about the person being an agent of the insured versus being an insurance agent, which are two separate legal things. You could be an agent of a person, which Leadbetter Insurance Agency is, was acting as Carol's agent. That doesn't mean they're a, quote, unquote, insurance agent under the way that's been defined under the law. You're either an insurance broker or an insurance agent. And bizarrely, when we use those terms, it's the insurance broker who is the agent of the insured, whereas the insurance agent is the agent of the insurance company. So we have- Don't we at least have, I'm sorry, it's a little hard with the video here not to interrupt right in the middle of what you're saying, but I don't want to lose this either. So isn't there at the very least a genuine issue of material fact here as to whether or not Leadbetter was a broker or agent for the insured or the insurer? And therefore precluding summary judgment. I don't believe there is, Your Honor, under the test that exists right now. As the test set forth in Founders Insurance Company v. White, I don't think there is. I think if we're going to say these independent insurance brokers, that some of them may offer insurance to 20 or 30 companies. And how can we say that, oh, you are an agent of all 20 or 30 of these different companies? Under the test that exists right now in Illinois, the answer would be no. One of the reasons why in the Founders Insurance Company case that Founders was held to be a broker, an insurance broker, and not an insurance agent, was because they worked with 15 to 20 different insurance companies. It would be impossible for someone like that or someone like Leadbetter to owe their allegiance to 20 different competing insurance companies. Now, Founders Insurance wants the auto coverage business of Carroll. Madison Mutual wants the auto insurance business of Carroll. How can Leadbetter appease those two masters if she's really an agent of both of them? It would be impossible. And that's why they're independent, because they get to help their insured pick and choose what coverage is right for them, regardless of what company provides it. There would be no way for a broker to manage all of those different masters. And the contract with Madison Mutual that Justice Zinoff mentioned does not say that you have to place all of your insurance coverage with us. It doesn't say that. It says that you have the right to get access to our system to transfer any applications that you may want to submit to Madison Mutual. I don't think there is a question of fact. I think the facts are all stated in Patty Leadbetter's deposition. There are no contrary facts that say, no, she could only write coverage for Madison Mutual or that, no, Carroll didn't seek her out. I think all the facts are already there. I don't believe that is a question of fact. Thank you. I do agree, Your Honor, that if it is a question of fact, however, that the trial court was wrong, just as you stated earlier, that if it is a question of fact, obviously the court can't enter summary judgment. But I believe that's a question of law because there's no dispute as to those specific facts of Patty Leadbetter's testimony. There are no contrary facts that I'm aware of that would say, oh, no, she could only bind coverage for Madison Mutual. I haven't seen that anywhere. I haven't seen any contrary testimony about she being sought out by the Leadbetter Insurance Agency. I believe it was Kim Weidman who took her down there and actually placed the call to say, hey, I need auto insurance, that she reached out to them. And I believe under those facts that Patty Leadbetter's action, regardless of it was Patty or whether it was Carroll, whoever put that in there under Section 154, that policy can be rescinded. The other issue, as I mentioned when I began, was this issue of the defenses. So after the policy was held reinstated by the trial court, Madison Mutual was allowed to plead policy defenses, and the main one was notice. The notice provision in this policy states that if you do not provide us notice pursuant to the following requirements and it prejudices the insurance company, then there would be no coverage. The prejudice here, I think, is pretty obvious. What happened was in March of 2020, this dog mauled Cassandra Weidman. There was no notice provided to Madison Mutual by Carroll ever, ever. Madison Mutual found out about this through Cassandra Weidman's attorney in September of 2020 after the second and third attacks by this dog occurred. So Carroll provided no notice at all. And the notice provision says it needs to be provided in writing as soon as practical, and the case law says as soon as practical means a reasonable time. A reasonable time in this instance is not six months. Carroll knew that this dog had mauled her granddaughter to the point that there was exposed muscle tissue, there was a police report, she had to be taken to the emergency department to receive treatment. This was a serious attack, and Carroll said nothing. It is pretty clear to me that under the policy language that that's prejudicial because, as Madison Mutual said, they would have never insured a home at the time that had a pit bull in it. For these reasons that Madison Mutual believed that there was a likelihood of an attack. And had they found out of this attack in March, they would have canceled or rescinded the policy before September rolled around and at which point there would be no coverage provided by Madison Mutual to cover the second and third attacks. The trial court dismissed, or excuse me, I believe they granted summary judgment on those policy defenses on the grounds that... The trial court granted summary judgment on the policy defenses? I thought they were dismissed. Well, I'm trying to... Maybe I misread the record, but you're talking, maybe you can clarify that. Well, I'm trying to remember the order because what happened... Yeah, they... Part of this happened a long time previously before the Rule 304A order was entered. So perhaps I'm getting the two of them confused based on the amount of time that it elapsed, whether they were dismissed or whether summary judgment was granted. But in any case... The argument was that, well, no, this is a per-occurrence notice provision. And the language in the policy does not state that. It doesn't state, if you don't provide notice of this specific occurrence, there's no coverage for that occurrence. It states that there is prejudice to the insurer. And in this case, the prejudice of not being reported affected the later two attacks. Okay, Mr. Shoken, your time is up. You'll have time in rebuttal. Mr. Cassidy, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel, I'm Drew Cassidy. I'm the attorney for Susan King. Susan is one of... This case involves the two different dates, three different dog attacks, March 30th, 2020 and September 18th, 2020. Susan King is one of the victims of the latter September 18th incidences. I want to take these in the order of the issues that the trial court dealt with, which are twofold. There was summary judgment on Madison Mutual's rescission claim. There was a dismissal with prejudice of the so-called notice policy defense. With all due respect to Mr. Shoken, he was not the attorney arguing these in the trial court, so his confusion is understandable. Mr. Cassidy, please just bookmark where you're at right now. Sorry for interrupting, but my question relates to the policy defense counts that were dismissed. If the court were to agree with Madison Mutual's claim that summary judgment should not have been entered against it, would this court need to address the dismissal of the counts? Would there be any other opportunity for Madison Mutual to have the propriety of the court's dismissal of those counts considered? It would not, Your Honor, depending upon the scope of your ruling. An outright reversal and grant of summary judgment in favor of Madison Mutual on the rescission claim would mean there is no policy, so there's no reason to get to policy defenses. Does that answer your question? Short of that, what would your response be? Well, if there's any sort of a remand, of course, I would request that the court address that second issue so that we know where we're going when we go back to the trial court. Because, as you know, our position is strongly this is not a policy defense with respect to the September 18th attacks. It may be a policy defense for the lack of notice of the occurrence on March 30th. Again, I'll just correct Mr. Sokin, he argues that the policy says you must give notice. What the policy says is you must give notice of an occurrence, and you must give the date, and you must give the time, and you must identify the witnesses. So the policy is clearly occurrence specific on this. And I'll address that more when I get to it, if that's okay, Your Honor. Thank you for answering the question. Yes. Counsel, good morning. I'm sorry, I have another question. That's fine. Much of your argument in your brief focuses on Kimberly's affidavit, which does say that Patty never asked her and Carol about the dogs. Yes. But now let's assume this is true. How does that establish that there was no material misrepresentation? Just because Carol may not have been asked about dogs doesn't necessarily mean that she never misrepresented her dog ownership. Isn't that correct? Maybe I'm misunderstanding the question, Your Honor. If Carol Weidman, and more accurately, Kim Weidman, who was handling the phone call for her elderly mother, was never asked the question about whether you have dogs in the house, there would have been no affirmative response, which could constitute a misrepresentation. Well, I guess it leads us into this whole issue of competing inferences here. Can't there be an inference that Carol made a misrepresentation because Patty says she asked her every question she usually asks anyone on her worksheet, which would be the necessary question for the application with respect to dogs? And then we get back again here to the issue of credibility that apparently the trial court may have gotten into with respect to these two affidavits. I'm sorry, the deposition testimony and the affidavit. I'm glad you bring that up, Judge. So to go back to your initial question, Kim Weidman handled the phone call for her mother that was made by Patty Ledbetter. Her affidavit is very clear that there was no question. They were never asked whether they had any dogs in the house. And therefore, I would submit to you that there could have been no misrepresentation by Carol because she wasn't asked the question. Now, I don't believe there is a question of fact because Patty Ledbetter did not say she asked the question. What she said specifically was, I don't even recall this phone call. In fact, if you look at the record, what Patty Ledbetter first said was that she met them in person and believed she asked all the questions in an in-person meeting. And she had to be corrected. And she said, oh, yes. Oh, yeah, okay. I think it was a phone call, but I don't remember it. And she said specifically that I don't know if I asked those questions because I don't remember the phone call. Now, from prodding from counsel for Madison Mutual, she did respond that, yes, it is my typical practice to answer all those. But I don't believe that saying it was my typical practice, but I don't know if I did in this case, versus an affirmative affidavit, which says we were never asked the question. I don't believe that creates a question of fact. It seems to me there's only two people who can testify to this, and only one of them has any recollection whatsoever. And I want to briefly address this, Judge, because it came up during Mr. Silkin's argument about surprise of an affidavit. There's no surprise in this affidavit. Kim Weidman had been disclosed in the Rule 213 disclosures, this is of her record, for nearly a year before that affidavit came out. It said clearly what she was going to testify to. When the affidavit came down, counsel moved to strike it. They were given an opportunity to oppose her. They chose not to do it. So there was no surprise. They went forward with an argument, knowing what they were going to be faced. There was no surprise or any unfairness here. So I would suggest that what we do know here is the only witness who says she has any recollection says they were never asked about dogs in the house. And we know that Carol Weidman never saw the so-called Ledbetter questionnaire. And we know that when she was asked to come in to sign the application, they withheld the one page upon which Madison Mutual now relies in saying she made a misrepresentation. So, to me, that defeats any argument about prima facie evidence or presumption that Carol Weidman affirmed this answer when she signed the application because it's undisputed. She did not see that misrepresentation. It was concealed from her. And so I believe the trial court was absolutely correct in granting summary judgment because the burden is on the insurer to prove that a misrepresentation was made, which is sufficient for a rescission. And with Patty Ledbetter's lack of recollection and Kim Weidman's testimony, there was no longer a question of fact and the court simply ruled they cannot meet their burden of proof that Carol Weidman made a misrepresentation. So, at this point, that is why Madison Mutual is now coming in with a new argument because they can't get around that clear evidence. There is no, again, at the risk of repeating myself, Patty Ledbetter does not contradict Kim Weidman. She just simply doesn't recall it. So, I want to go to this waiver argument, Judge. And what they're arguing now is that Patty Ledbetter was the agent of Carol Weidman. And again, I believe it has been waived. It is our argument it has been waived. What Madison Mutual argues is that it raised the issue by quoting Section 154 of the Illinois Insurance Code. Section 154 includes the language which they now rely upon that says made by the insured or in his behalf. So, they're relying upon this or in his behalf to say that this agent's conduct is imputed to Carol Weidman. However, one need only review the motion for summary judgment to see that this is a disingenuous argument. Madison Mutual spent a good deal of time in their written motion for summary judgment, parsing out the words of Section 154. They broke down the sentences into parts for the purposes of arguing that it did not have to be an intentional misrepresentation and to argue that it could be an innocent misrepresentation. So, this was consistent with their argument that, well, she signed, and therefore she affirmed it, and that would be innocent, but that's still enough if it affected the risk. So, did it not affect the risk here. I mean, it wasn't. Yes, and I don't and I don't disagree with that rule of law that that you don't need an intentional misrepresentation in there. But my point here is in parsing out every word of Section 154 in their motion, not once do they mention the words in his behalf, which they now rely upon to say they argued this agency theory, this imputed liability theory. So, this argument that because they quoted Section 154 that raises the issue is, you know, all due respect, somewhat ludicrous. Well, it's boilerplate, is it not? They quoted boilerplate rather than making an argument. Yes, they quoted the entire statute, but they didn't rely upon that part of the statute that they now say, you know, means they didn't make a waiver. I'll also point out that in their motion for summary judgment, they go to great detail of bullet pointing Patty Ledbetter's testimony. Not once, not once in that will you see that they referenced any testimony from Patty Ledbetter about acting on behalf of Carol Wiedemann. And it's because it wasn't an issue. It was never an issue in this case until they lost on summary judgment on their twofold argument that either she lied or she affirmed it by signing the application. The only two issues they relied upon for summary judgment. So, how do you respond to opposing counsel's argument that the Ledbetter agency couldn't have been an agent or broker for the insurer because they were, Ledbetter was, I guess, working for a number of other companies? Well, I would respond to that by saying that is the second prong of the test once you get passed waiver. And my position on that is, is exactly as you said, Justice, the record is incomplete. There is not enough here for this court to now make that factual determination, because it was never an issue in the trial court. No discovery was completed on it. Patty Ledbetter wasn't asked about it. The owner of the Ledbetter agency wasn't asked about it. There's simply an insufficient record. Mr. Sokin is simply speculating using an agency contract that was never argued in any motion or in any hearing. And now they're going back and saying, well, we meet this four factor test. Well, it is a multifactorial test and it's heavy factor related and there was never any discovery on it. So there's no record for you to make that determination, which supports our argument that this is being raised for the first time on appeal and has been waived. So, I want to go back in the argument here that on the waiver. So even after receiving Carol Wiedemann's response and seeing the cross motion, which set forth the evidence that Patty Ledbetter provided the information, not Carol Wiedemann, Madison Mutuals only, they want to argue that they argued independent broker, independent broker, the trial court. But if you look at the argument, they raised the fact she was an independent broker only in one context. And that context was that she had no reason to lie, because she could have simply written this with another insurance company. They didn't refer to as an independent broker to argue that she was that that her negligence or whatever, why ever she did it must be imputed to Carol Wiedemann. They were solely arguing that well she could have just written it for somebody else so she had no reason to lie. It was a defense to the argument about who made the misrepresentation, not that Patty Ledbetter's conduct should be imputed to the insured. So, you are absolutely correct judge that this was never raised before the motion to reconsider and only in passing at the motion to reconsider. Again, mostly in the context of why would Patty Ledbetter lie because she could have written it for somebody else. Oh, yeah, I would simply say that this imputed liability theory is simply never been raised, it is waived. And I think the absence of any evidence in the record for the court to test the multifactorial test that set forth in the case law side by Mr. Sokin proves that this was never an issue at the trial court. And so counsel on this issue with respect to notice. As for appellants notice claim here. Doesn't the policy require that Carol inform the insurance company of an occurrence, and that wasn't done here. Isn't that correct, it, it does your honor, it requires the requires notice, as you say, of an occurrence. Case laws, pretty clear across Illinois that the purpose that notice requirements are valid prerequisites to coverage, because the insurer must be given the ability to investigate the occurrence. Get witnesses while the while the information is fresh, go get physical evidence, while the information to be prepared to defend against an acclaimed acclaimed related to that occurrence. But that's not what does it say that occurrence. I mean, you're, are you saying that the insured faces no consequence for failure to notify the insurance company. No, there, there would be a definite consequence here, a challenge to the coverage for the March 30 2020 incident, which she failed to report. But you're saying nothing with respect to the September incident. No, the company didn't have the right to either rescind or consider the policy void. Well, the rescission doesn't go to the notice that goes to the misrepresentation. There's not a basis to rescind on notice that I'm aware of. You're correct that this is a coverage defense for this particular client. But again, they're not saying in fact they concede there was proper notice of the September 18 attack. What they're trying to say is, boy, if we had been given this notice, we would have canceled. But I can't get around the fact that on September 18 2020 this policy was in effect. It had not been canceled. It had not been rescinded. There is no law that I'm aware that allows a retroactive cancellation. I've cited the case law from the Illinois Supreme Court, the Barrington High School case which says that an insured is not required to report every occurrence. They must report it if they want coverage for that occurrence. But there's any number of reasons an insured might not want to report an occurrence. Could be a teen driver gets in an accident and you would rather pay the loss out of your pocket than to see higher premiums in the future. There's nothing wrong with that. There's no case law like that. But if you accept Madison Mutual's argument, once an insured fails to give notice of an occurrence, even if they don't want coverage for that occurrence, now there's this get out of jail free card for the insurance company. They're allowed to sit back, collect premiums indefinitely, and then if a claim comes up and they learn about the one that wasn't reported, oh, well, now there's no coverage for anything because we would have canceled you years ago. The policy of insurance would become illusory. And that's what they're arguing here, that in hindsight, if we'd been given that notice, we might have canceled. But there was no obligation for her to give that notice of the March 30th, 2020, if she didn't want coverage for it. She gave notice. Notice was given of the September 18th, and it must be occurrence specific. You know, I don't need to be really flippant on this, but in 35 years of practice, one thing I've kind of noticed is that sometimes the most basic principles of law are the hardest to find case law on. And I suspect that's because appellate courts don't need to write opinions on things that are so spatially self-evident. Here, the Illinois Supreme Court has said there is no obligation of an insured to report every occurrence. What we can't find is any case law that says the notice requirement is occurrence specific. And again, I suspect because that is so facially self-evident that nobody has brought it to an appellate court that an appellate court felt the need to have to write an opinion about it. The language of the policy is so clear that it refers to that occurrence, time, date, place, witnesses. And the case law in Illinois about the purpose of notice requirements, being so the insured can properly investigate that incident to be able to defend it. When you look at it as a whole, this argument that they are allowed to retroactively cancel a policy, to what date, I don't know. They don't care as long as it's before September 18th, simply cannot be accepted. So if I can go back, you mentioned this Barrington High School case, the 1974 Supreme Court case. Aren't the facts there somewhat different, though, because there, I believe there was an injury. The injury was pretty minor and would not have generated a claim. And that's not the situation here. The injuries were really pretty serious here and obviously would have generated a claim. So why should we be relying on that case at your suggestion? Judge, you're correct. The fact was that the school district felt it would never generate a claim when it subsequently did. So they were actually faced with the same claim in that case, which I find interesting because the notice requirement should have precluded coverage on that one. But the difference here is there isn't a failure to give notice for this occurrence. So, again, the best way I can answer it is if you say once the insured, for whatever reason, chooses to not report an occurrence and make a claim, that that gives the insurer carte blanche into the future to not provide coverage despite continuing to collect premium. It just simply cannot be the law. You're allowing insurance companies to take money for illusory contracts. Mr. Cassidy, you're out of time. Did you have any follow-up to that? I do not. Thank you. Okay. Thank you. Mr. Sokin, rebuttal argument. Thank you, Justice. I'd like to pick up with this argument about notice because counsel has misread the provision that's at issue here. It's on appendix page 46. What it says is this, quote, we have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us, period. It then goes on to discuss the notice provisions. Madison Mutual is not saying that, well, because she didn't report this dog bite, if she had hail damage six months later, we're not going to cover the hail damage. What they're saying is it's prejudicial to us because you did not tell us about this dog bite, at which point we would have learned, wait a minute, this application says you don't have a dog at all, and we don't cover houses that have pit bulls. That's why it's prejudicial. It has nothing to do with a get-out-of-jail-free card for every claim that might happen in the future. It's specifically because this instance is prejudicial to the insurance company because they helped cover up a material misrepresentation. That is the distinction here. It's not her occurrence. It's not that she can cover this up. I mean, under Mr. Cassidy's view, there could have been 50 dog bites. She could have provided notice of none of them. And then on the 51st, they say, well, here it is, and you've got to cover it. And the insurance company is saying, wait a minute, you had a duty to report the previous 50 dog bites. And then they say, well, we had a right to not tell you. Well, no, she doesn't have a right not to tell you. The Barrington case was a very minor injury in a PE class that no one thought was going to generate a claim. This was, as counsel admitted, a very serious attack that resulted in a police report. It resulted in emergency medical treatment. There was obviously going to be a claim here, and a claim was made. And the company didn't find out about it until six months later after two more people were attacked. So there's nothing in this notice provision that is against public policy that I'm aware of. No one has cited any case law that says that we can't have a notice provision that says if you don't tell us of this occurrence, and it prejudices us later, that we can't deny coverage for it. So, counsel, in your example about the 50 cases or incidents and not being reported, are you saying that that notice provision, the import of it, is that every single incident must be reported no matter how minor? Or are you saying that it has to be reported if it would generate a claim because that would be prejudicial? And if so, how is that determined? And by whom? I am saying that they have to give an occurrence. I don't think anyone would dispute that March 20th, March 2020, the dog bite was an occurrence. She is required to give notice of any occurrence under the policy. It does not talk about minor occurrences or major occurrences. And the Barrington case does stand for the fact that you don't have to report minor occurrences. But no one here is making the argument that this is a minor occurrence under Barrington. It was a very serious occurrence. And it was a very serious occurrence that if revealed, would have revealed there was a material misrepresentation in the policy. And that's why it's prejudicial. The prejudice isn't because she didn't report it. The prejudice is because she didn't report it and it would have revealed, wait a minute, we don't recover this at all. And we never would have issued this policy at all. We would have found out about this before these other attacks. And it's basically giving insureds the ability to say, you know what, I can lie on an application. And so long as I don't report the claims that I don't want them to know about and I just report the big ones, then I'm going to get coverage. I mean, it would be no different if she said, I don't own a boat. And we said, well, we don't cover boats. And then she goes off and gets in a boating accident and says, I want it covered. And there were two boating accidents before that. So she didn't report. I don't think insureds have this right under Illinois to hide from their insurance company that they materially misrepresented something and not tell anybody about it. As far as waiver is concerned, I think the court needs to very carefully review the argument that was made during the motion for summary judgment. I have never seen a waiver claim made before where the argument exists in the complaint. The complaint in this case alleges Patty Ledbetter is a broker, that the insurance application was submitted on her behalf, and that Madison Mutual is allowed to rescind a policy that has a material misrepresentation that was submitted on her behalf. And if you read the record of the argument at summary judgment, it was very specifically stated that we are making this argument that we have a right to rescind the policy if there's a misstatement provided in the application process by the independent insurance agency. That argument was made, and waiver is not a very strong hurdle to pass. It's been well passed when the argument is made in the complaint, and it's made orally during the motion. Well, you had mentioned representation made by the, just a quick, quick follow up, by the insurance or by the insurance broker. But really, wasn't it the explicit misrepresentation from Carol herself, which was the thrust of this argument that was being made? During the first briefing, during our initial brief, the main thrust was Carol made this argument. Carol made the misstatement, and then it was provided to Madison Mutual through the application process through the independent broker. During, in the response, Kim Weidman's affidavit was provided, and then at oral argument, these statements were made. I mean, I can read you quotes. I mean, page, pages. You don't have to do that, counsel. I understand. You're familiar with the record. Pages 34, pages 36. There are specific quotes made by counsel for Madison Mutual that say in the context of section 154, if there's a misstatement provided to Madison Mutual, it doesn't matter if it's provided by her or by the agent. It was made in the application process, and that's what matters for the statute, is it made in the application process, not necessarily by the insured, not necessarily by the broker. As long as it's made, there is a right to rescind. Thank you for your answer. I have no further questions. Thank you. Thank you, counsel. Thank you for your argument. The case will be taken under advisement, and the court will issue a written decision.